**Domingos Dos SANTOS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 83–0095–C.

United States District Court, D. Massachusetts.

March 1, 1985.

---

James P. McCarthy, McCarthy & Sheehan, Boston, Mass., for plaintiff.

Asst. U.S. Atty. Joan I. Milstein, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought under the Federal Tort Claims Act (28 U.S.C. § 1346 et seq.) by Domingo Dos Santos, a 48 year old non-English speaking fisherman who emigrated from Portugal to New Bedford, Massachusetts about seven years ago. After a bench trial, I find and rule as follows.

As a member of the crew of a commercial fishing boat, plaintiff was entitled to free medical care and treatment at the United States Public Health Service Hospital in Brighton, Massachusetts (commonly referred to as the Brighton Marine Hospital, hereafter "Brighton Marine").

Plaintiff presented himself at the Brighton Marine in June of 1980 as part of a group of fisherman who traveled in a union-supplied bus from New Bedford to Brighton. Plaintiff did so after visiting a Portugese speaking doctor in New Bedford, Dr. Almeida, who suggested that plaintiff obtain an examination at Brighton Marine.

In 1980 the Brighton Marine (which is no longer in operation) operated a Primary Care Clinic which saw 75–100 patients per day. It had a staff of physicians and nurse practitioners who met new patients, took histories and did some examination of the patients. At trial, none of the former members of the Brighton Marine staff who testified had any memory of plaintiff being there on June 11, 1980 but there was a hospital record produced which did refer to plaintiff's June 11 visit.

According to the record, plaintiff was initially examined by Virginia Felice, a nurse practitioner, who holds a B.S. and a Master's Degree in nursing. I find that plaintiff told Ms. Felice that he had felt hoarseness and "something on the left side of his throat" for about three months. He also told her that he smoked a pack of cigarettes a day for about 28 years and that his father had died of "neck cancer" at age 60. The hospital record shows that Ms. Felice noted that plaintiff had a "firm palpable left tonsillar or superficial cervical node, 2 cm."

Based on the fact that plaintiff testified that he was also seen by two males on June 11, 1980 and on the further fact that Ms. Felice did not normally order pulmunary function tests, I find that Ms. Felice followed accepted medical procedure by referring plaintiff to one of the staff physicians, who from the hospital record I infer, ordered a pulmonary function test for plaintiff.

The hospital records establish that plaintiff underwent a pulmonary function test on June 11 and that the test results were reviewed by Dr. Thomas Nary the director of the Primary Care Clinic at the time. Dr. Nary testified that the record bore his handwriting regarding the results of the pulmonary test.

The hospital record contains no treatment plan for plaintiff and the "Patient Assessment" form contains only the notation "Drugs—? Throat medication."

There is no reference in the hospital record to follow-up action of any kind.

I find that the staff members of the Brighton Marine who had contact with plaintiff on June 11, 1980 collectively were negligent in not providing for further evaluation of the 2 cm. node on plaintiff's neck, given the history of plaintiff noted in the hospital record. More specifically, I find the staff negligent for failing to refer plaintiff to the then available ear, nose and throat clinic at the hospital and in failing to schedule a definite appointment and notify plaintiff, and in failing to follow up on plaintiff's health situation.

Despite plaintiff's testimony, I do not find that anyone at the hospital ever told plaintiff that he merely had an inflamation in his throat.

Plaintiff and his family took a vacation trip to Portugal in the summer of 1980.

Mr. Dos Santos resumed fishing in September 1980 upon his return from Portugal and he continued to work as a crew member until about December 21, 1980 when he noticed a lump in his throat upon looking in a mirror. He presented himself to the Massachusetts Eye and Ear Infirmary in January 1981 where he was told he had cancer and was diagnosed as having a stage 4 squamous cell carcinoma. Chemotherapy was started for plaintiff in late January of 1981 but because of complications which developed, the chemotherapy was soon discontinued and plaintiff underwent surgery in May 1981 consisting of a total laryngectomy and left radical neck dissection.

The theory underlying plaintiff's claim is that the negligence of the staff at the Brighton Marine caused a delay in plaintiff receiving either chemotherapy or surgery which delay allowed his condition to worsen and the lapse of time made necessary the surgery, some or all of which plaintiff claimed would not have been necessary had chemotherapy been instituted back in June of 1980.

The crucial question for resolution herein is whether or not the negligence, and re-sulting delay in plaintiff's being treated for cancer, was a proximate cause of his undergoing the more extensive surgery with its attendant greater negative impact on plaintiff.

Dr. Francis Joseph O'Connor who was called as plaintiff's expert testified that he is a radiation oncologist who is presently located in Clarksburg, West Virginia. Dr. O'Connor testified that he is a graduate of Tufts University Medical School; that he has spent four years in the Radiology Department at Boston City Hospital doing radiology and radiotherapy; he has spent time at the Cancer Research Institute at the Deaconess Hospital; he spent 25 years at the Augusta Hospital in Maine from 1955–1981 and he has also spent some time at the Sidney Farber Kidney Foundation in Boston. He is board certified in diagnostic radiology and in radiotherapy. Dr. O'Connor testified that he does not do major surgery and has not performed any laryngectomies. He further testified that he has read plaintiff's hospital record from the Massachusetts Eye and Ear Infirmary, from the Brighton Marine Hospital and from the Massachusetts General Hospital. He conceded that he has not seen any records more recent than August of 1983, that he has not examined plaintiff, has never spoken to plaintiff, has never spoken to Dr. Almeida, nor referred to any records of Dr. Almeida, nor has he spoken with any of plaintiff's treating physicians.

Dr. O'Connor testified that it was his opinion that plaintiff was suffering from cancer in June of 1980 and that he was of the further opinion that plaintiff then had a stage 3 cancer. Dr. O'Connor also expressed the opinion that had plaintiff been evaluated and treated in June of 1980 that radiotherapy would have treated him properly without the need for surgery.

The substance of Dr. O'Connor's opinion testimony was directly contradicted by the opinion testimony of Dr. George Simpson, II. Dr. Simpson is a surgeon, board certified in ototaryngology, a fellow of the American College of Surgeons, and a fellow of the American Academy of Ototaryn-

gology, Head and Neck Surgery. He is clinical instructor in ototaryngology at Tufts School of Medicine and director of the Department of Otolaryngology at Boston City Hospital. He is also an associate ototaryngologist at the University Hospital in Boston and an Assistant Ototaryngologist at the Children's Hospital Medical Center. Ototaryngology is an area of medical specialty which concerns itself with the diagnosis, treatment, and surgery of cancer in the head and neck areas including the ear, the face, the neck, and the throat.

Dr. Simpson testified that he performs one or two operations on the larynx per week and that he does about 30 operations a year involving cancer of the patients larynx. Dr. Simpson, after reviewing all of the available records on plaintiff, expressed the opinion that plaintiff was suffering from squamous cell carcinoma in both June of 1980 and January of 1981. He testified that his opinion was based on the fact that plaintiff in June 1980 was an adult smoker who had a mass in the neck, and on the fact that 90% of the time such an adult patient who developed a mass in the neck will be diagnosed as having squamous cell carcinoma which has metastasized from an area in the throat or in the oral cavity. Dr. Simpson testified that plaintiff's hoarseness and vague sensation in the throat are classical symptoms of a tumor occurring in the supraglottic larynx and the pyriform sinus or hypopharynx.

Dr. Simpson expressed the opinion that the total laryngectomy and left radical neck dissection which plaintiff underwent in March 1981 would have had to be performed even had he presented himself in June of 1980. This opinion is based on the fact that as of June 1980 plaintiff already had a neck metastasis, i.e. a stage 3 cancer. Dr. Simpson testified that radiation alone will not cure a stage 3 cancer of the larynx, hypopharynx with a neck metastasis. He expressly testified in response to a question from the Court that there was some metastasis in plaintiff by June of 1980 and that both stage 3 and stage 4 are very

advanced cancers. Dr. Simpson further testified that it was his opinion that the prognosis for plaintiff would be no different had the cancer been treated in June of 1980 rather than in March of 1981.

Dr. Simpson expressed the opinion that when a patient regresses from stage 3 to stage 4 his chances of total recovery are decreased. He also stated, however, that with each passing month in which plaintiff remains cancer free, there is less and less probability of recurrence. He has now been cancer free for over two years.

One of the essential elements which plaintiff must prove by a preponderance of the evidence is that the defendant's negligence was a proximate cause of the pain and disability resultant from the surgery for which he now seeks compensation. Having in mind the hospital records and the testimony of both Dr. O'Connor and Dr. Simpson, I rule that plaintiff has not proven that it is more likely so than not that defendant's actions or non-actions were a proximate cause of his sustaining more disability than he would have sustained had he been started on radiology treatment within a reasonable time after his June 1980 visit to the Brighton Marine Hospital.

Order accordingly.

## ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. Judgment for defendant.

2. Complaint dismissed.